# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| Nicholas R., | Civil Action |
| Plaintiff, | No. 22-04510 |
| v. | |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, | **OPINION** |
| Defendant. | |

**Appearances:**

Lauren S. Tovinsky
JACOBS SCHWABLE & PETRUZELLI PC
10 Melrose Avenue
Suite 340
Cherry Hill, NJ 08003

    *On behalf of Plaintiff Nicholas R.*


Quinn Niblack-Doggett
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
6401 Security Blvd.
Baltimore, MD 21235

    *On behalf of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.*

**O'HEARN, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Nicholas R.'s[1] appeal from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Defendant"). The Court did not hear oral argument pursuant to Local Civil Rule 78.1. For the reasons that follow, the Acting Commissioner's final decision is **VACATED** and Plaintiff's claim is **REMANDED** for further consideration consistent with this Opinion.

## II. BACKGROUND

The Court recites herein only those facts necessary for its determination on this appeal.

### A. Administrative History

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on June 6, 2019 alleging an onset date of disability beginning June 6, 2019. (AR 78). Plaintiff's claims were denied initially on October 3, 2019, and again on reconsideration on February 7, 2020. (AR 78). Plaintiff participated in an online video hearing due to the then ongoing Coronavirus Disease 2019 (COVID-19) Pandemic before an Administrative Law Judge ("ALJ") on April 13, 2021. (AR 17, 78). Plaintiff was represented by Henry J. Kowalski, III, who was present at the hearing. (AR 19). Both Plaintiff and Kentrell Pittman, a vocational expert ("VE"), testified at the hearing. (AR 17, 26). In a decision dated August 20, 2021, the ALJ found that Plaintiff was not disabled under the Social Security Act. (AR 78–99). Plaintiff's Request for Review by the Appeals Council was denied on June 9, 2022. (AR 1–3). Thus, the August 20, 2021

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

ALJ Decision became the final decision of the Commissioner. On July 11, 2022, Plaintiff initiated the present action. (Compl., ECF No. 1).

### B. Plaintiff's Background and Testimony

Plaintiff was 28 years old on his alleged onset date of June 6, 2019, and lived with his parents, fiancée, and two daughters. (AR 28). He worked in the kitchen of a hospital as a dietary aide for four years and as a cemetery groundskeeper from 2015 to 2019. (AR 25, 72).

Plaintiff testified that he has daily pain in his back, shoulder, knee, hip, hands, and feet. (AR 38–39). He reported needing help with bathing and putting on shoes (AR 41), needing to use a cane, back brace and knee brace to move around the house (AR 37–38), and being unable cook because he cannot pick up pans or bend to put things in the oven (AR 40). Plaintiff testified that he can comfortably walk about 30 feet, but any farther causes him to feel "a weight . . . on [his] spine." (AR 39). Plaintiff also testified that he can only sit comfortably for 10 to 15 minutes and can only drive for periods of less than 20 minutes because he needs to get out to stretch. (AR 38, 42). He has been prescribed medication and physical therapy for pain. (AR 33, 35–36). Regarding his mental health, Plaintiff reported depression, attention deficit hyperactivity disorder ("ADHD"), anxiety, and post-traumatic stress disorder ("PTSD"), which resulted from motor vehicle accidents. (AR 1717). Plaintiff elaborated that when under stress, he "get[s] upset, confused, [and] agitated" (AR 275), that "PTSD and anxiety makes relationships hard" (AR 296), and that he needs reminders for appointments and to take medications. (AR 271, 293).

### C. Relevant Medical Evidence

The Court will briefly summarize the relevant medical evidence for purposes of this appeal. This recitation is not comprehensive. Plaintiff has challenged both the physical and mental

3

limitations on appeal, however, because this Court is remanding on the ALJ's assessment of mental limitations, the background and analysis will be limited to that issue.

1. <u>Dr. Yvonne Burgess</u>

Dr. Burgess treated Plaintiff in 2018 and 2019 and diagnosed him with depression, PTSD, insomnia, and attention deficit hyperactivity disorder. (AR 1049–1108). She prescribed Xanax for PTSD, Gabapentin as a sleep aid, and Adderall and dextroamphetamine amphetamine for ADHD. (AR 287, 1108).

Dr. Burgess sometimes noted that Plaintiff was distractible upon examination. (AR 1050, 1052, 1054, 1057, 1060, 1062, 1064, 1096, 1098, 1100, 1102, 1104, 1106, 1108). Her notes further described his mood and affect ranging from within normal limits (AR 1050), to depressed and anxious (AR 1056, 1061, 1063, 1095, 1097, 1103, 1107), to irritable and labile. (AR 1061, 1065, 1095, 1097, 1107).

2. <u>Dr. Annamaria Pruscino</u>

In a September 25, 2019 medical report, Disability Determination Services ("DDS") medical consultant Dr. Pruscino noted that the Plaintiff's psychological impairments did not satisfy the diagnostic criteria listed in sections 12.04 (Depressive, Bipolar, and Related Disorders), 12.06 (Anxiety and Obsessive–Compulsive Disorders), and 12.15 (Trauma and Stressor – Related Disorders). (AR 57–73). Her Psychiatric Review Technique ("PRT") assessment found mild limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. (AR 58). By contrast, Dr. Pruscino's Mental Residual Functional Capacity ("MRFC") assessment found moderate limitations in five categories: the ability to understand and remember detailed instructions; carry out detailed instructions; maintain

attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting. (AR 60–61).

3. Dr. Teissy Meza

In a February 3, 2020 assessment, a second DDS medical consultant, Dr. Teissy Meza, reviewed the Plaintiff's diagnoses and treatment. (AR 66–74). Dr. Meza's PRT agreed with Dr. Pruscino's with one difference: Dr. Meza found a mild limitation in Plaintiff's ability to concentrate, persist, or maintain pace whereas Dr. Pruscino found moderate limitations. (AR 69–70). As for the MRFC, Dr. Meza's findings mirrored Dr. Pruscino's, finding moderate limitations in the same six categories. (AR 71–73).

**D.     The ALJ's Decision**

The ALJ's five-step sequential analysis concluded with a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 98); *see* C.F.R. § 404.1520. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of June 6, 2019. (AR 80). At Step Two, the ALJ found "obesity; ankylosing spondylitis; internal derangement of the left knee, status-post arthroscopic repair; chronic pain syndrome; internal derangement of the right shoulder; and degenerative disc disease of the thoracic and lumbar spine" to be severe impairments. (AR 80).

At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed at 20 C.F.R. Part 404, subpart P, Appendix 1. (AR 83). Before proceeding to Step Four, the ALJ determined that Plaintiff retained the residual functioning

capacity ("RFC") to perform a substantial range of sedentary work as defined in 20 CFR 404.1567(a), finding that Plaintiff

> is able to sit for 6 hours and stand/walk for 2 hours in an 8-hour workday, and to lift and carry 10 pounds occasionally and less than 10 pounds frequently. The claimant can only occasionally climb, balance, stoop, kneel, crouch, crawl, or reach overhead with his right arm; and he requires the use of a cane to ambulate.

(AR 83). Based on the testimony of the VE, the ALJ found that Plaintiff could perform the jobs of Addresser, Charge Account Clerk, and Document Preparer, and that a significant number of such jobs existed in the national economy. (AR 98). Thus, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (AR 98).

### III.   LEGAL STANDARD

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by "substantial evidence." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotations omitted); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.

> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original, citations and footnote omitted).

### IV.  **DISCUSSION**

On appeal, Plaintiff argues that the ALJ did not properly evaluate the opinion of Drs. Meza and Pruscino. (Pla. Br., ECF No. 10 at 19). Specifically, Plaintiff alleges that the ALJ failed to thoroughly discuss the supportability and consistency factors of these medical opinions in determining the Plaintiff's RFC. (Pla. Reply Br., ECF No. 12 at 4). For the following reasons, the Court agrees and finds that remand is required.[2]

> "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a). Here, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 CFR 404.1567(a), andis able to sit for 6 hours and stand/walk for 2 hours in an 8-hour workday, and to lift and carry 10 pounds occasionally and less than 10 pounds frequently. The claimant can only occasionally climb, balance, stoop, kneel, crouch, crawl, or reach overhead with his right arm; and he requires the use of a cane to ambulate.

(AR 83).

---

[2] Having found that the case must be remanded for a new Step Four finding, the Court need not address Plaintiff's remaining arguments. On remand, however, the ALJ is encouraged to consider and/or address all of the issues raised by Plaintiff. *See Basnett v. Comm'r of Soc. Sec.,* No. 18-4567, 2019 WL 1375779 at *9 n.4 (D.N.J. Mar. 26, 2019).

In using medical opinions to determine an individual's residual functional capacity, the regulations require an ALJ to consider the opinion's persuasiveness.[3] 20 C.F.R. § 404.1520c(a). An ALJ's consideration of competing medical opinions is guided by the following factors: the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is consistent with the record as a whole (consistency); the length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c; *see also Cota v. Kijakazi*, No. 21-672, 2022 WL 3686593, at *5 (M.D. Pa. Aug. 25, 2022).

The two most important factors in evaluating a medical opinion are supportability and consistency, 20 C.F.R. § 404.1520c(a), and failure to thoroughly evaluate these factors is error. *Andrews v. Kijakazi*, No. 20-1878, 2022 WL 617118, at *21–22 (M.D. Pa. Mar. 2, 2022) (remanding where the ALJ "tersely addressed both the supportability and consistency of [a provider's] opinion" which makes "the ALJ's rationale . . . too opaque to permit judicial review"). The supportability of the opinion describes the "extent to which a medical source has articulated support for the medical source's own opinion," *Cota*, No. 21-672, 2022 WL 3686593, at *7 (citation omitted), while consistency compares the medical opinion with other medical opinions

---

[3] Plaintiff's claims were filed June 6, 2019 and therefore the amended regulations regarding the evaluation of medical evidence apply. *Bruce T., v. Kijakazi*, No. 21-20289, 2022 WL 10025372, at *2 (D.N.J. Oct. 17, 2022) ("The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded." (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 19-0942, 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020))).

and relevant evidence in the record, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2); *Andrew G. v. Comm'r of Soc. Sec.*, No. 19-0942, 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

While an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 119); *see K.K. on behalf of K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter v. Harris*, 642 F.2d 700, 705–706 (3d Cir 1981); *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer*, 186 F.3d at 429).

Here, the ALJ failed to provide sufficient rationale for either the supportability or consistency factors. Beginning with the supportability factor, this Court finds that the ALJ's analysis of Drs. Meza and Pruscino's opinions is insufficient.

When evaluating Dr. Meza's opinion, the ALJ accepted the findings of mild limitations and stated:

> Regarding the claimant's mental impairments, the opinions of DDS medical consultant Dr. Meza in Exhibit 4A are persuasive, as they are supported by a review of the record as it stood at the time, as well as a detailed rationale . . . . The portions of Dr. Meza's opinion that the claimant was moderately limited . . . are less persuasive, as these portions of her opinion are not sufficiently consistent with the treatment or examination findings of record.

10

(AR 96). This is the entirety of the ALJ's discussion of the supportability of Dr. Meza's opinion. The ALJ simply discredited the portion of Dr. Meza's opinion that found moderate limitations without addressing supportability. (AR 94). While the ALJ did appear to consider the supportability of Dr. Pruscino's opinion, he merely provided the same superficial analysis, noting that her opinions "are somewhat persuasive, as they are based on a review of the record as it stood at the time, as well as a detailed rationale." (AR 97).

The ALJ's analysis of these medical opinions is conclusory at best and does not satisfy the regulation which requires that the ALJ explain *how* he considered the supportability factor. *See Bruce T. v. Comm'r of Soc. Sec.*, No. 21-20289, 2022 WL 10025372, at *6 (D.N.J. Oct. 17, 2022) (finding an ALJ's statement that a doctor's testimony was "not supported by the objective evidence and [in]consistent with the other evidence of record" was insufficient to conduct a meaningful review of the supportability and consistency of the opinion); *Maria R. v. Kijakazi*, No. 20-10264, 2022 WL 714737, at *7 (D.N.J. Mar. 10, 2022) (remanding where "the ALJ failed to explain *how* he considered the required factors of supportability and consistency. . . . the ALJ did not explain— nor is it apparent to the Court—how this evidence is inconsistent with [the doctor's] opinions"); *Cynthia D. v. Kijakazi*, No. 21-18011, 2022 WL 13847126, at *5 (D.N.J. Oct. 24, 2022) (remanding because "[t]he ALJ is required to explain *how* she evaluated the supportability of [the doctor's] opinion, and the Court cannot even determine whether she did so from these few cursory statements."). This cursory analysis frustrates this Court's review of the ALJ's decision. *Devonte C. v. Kijakazi*, No. 21-141, 2023 WL 2808103, at *8 (D.N.J. Apr. 6, 2023) ("Fundamentally, the ALJ's failure to adequately explain how he considered the factors of consistency and supportability in his evaluation of [the provider's] opinion frustrates this Court's ability to determine whether substantial evidence supports that evaluation and, ultimately, the ALJ's disability determination.").

11

The Court is similarly concerned with ALJ's consistency factor analysis. This factor requires "a comparison between the medical source's opinion and 'evidence from other medical sources and nonmedical sources' in the file." *Acosta C. v. Comm'r of Soc. Sec.*, No. 20-0502, 2021 WL 363682, at *15 (S.D.N.Y. Jan. 29, 2021), *R. & R. adopted*, No. 20-0502, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022) (quoting 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). Under the consistency factor, a medical opinion is "more persuasive" if it is consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). If there are inconsistencies, the ALJ's decision must not be "silent as to whether, or in what way, [a physician's] opinions were inconsistent with . . . treatment notes or other record evidence." *Ramije R. v. Kijakazi*, No. 20-14073, 2022 WL 909761, at *7 (D.N.J. Mar. 29, 2022).

Here, the ALJ failed to thoroughly discuss the purported inconsistency of Dr. Meza's opinion. The ALJ found the doctor's moderate findings "not sufficiently consistent with the treatment or examination findings" without pointing to any inconsistent medical evidence. (AR 97). This is especially lacking considering the apparent consistency with Dr. Pruscino's opinion, which also found moderate limitations in the same categories. (AR 60–61, 71–73). The ALJ similarly found Dr. Pruscino's opinion "only somewhat consistent with the record as a whole." (AR 97). These conclusory and unsupported statements of inconsistency are insufficient for this Court to engage in a meaningful review. *See Maria R.*, No. 20-10264, 2022 WL 714737, at *7 (collecting cases).

The regulations are clear that supportability and consistency are critical factors in an ALJ's analysis of a medical opinion and the failure to thoroughly discuss both factors is error. 20 C.F.R. § 404.1520c(a). Therefore, this Court cannot find that the ALJ's evaluation of Drs. Meza and Pruscino's opinions is supported by substantial evidence. While it may very well be that the ALJ

12

reaches the same decision on remand, it is this Court's obligation to ensure that the ALJ fully evaluates the evidence in the record and follows all applicable regulations by detailing such evaluation. *See, e.g.*, *Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation.").

Finally, the Court cannot find this error to be harmless. If the ALJ had fully evaluated the supportability and consistency of Drs. Meza and Pruscino's opinions, he may have incorporated more severe mental limitations into the RFC assessment. *See, e.g.*, *Cota*, No. 21-672, 2022 WL 3686593, at *6–7 (finding the ALJ's failure to address the supportability and consistency of a medical opinion to be harmful error). If the ALJ had incorporated mental limitations into the RFC—for example finding limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions—this, in turn, could have eliminated the three representative occupations offered by the vocational expert—(1) an addresser (DOT 209.587-010), (2) a charge account clerk (205.367-014), and (3) a document preparer (DOT 249.587-018)—all of which require the capability to understand, remember, and carry out detailed instructions.

For these reasons, the decision of the Acting Commissioner must be vacated, and the matter remanded for further consideration of the supportability and consistency factors.

## V.     **CONCLUSION**

For the foregoing reasons, the Acting Commissioner's final decision is **VACATED** and Plaintiff's claim is **REMANDED** for further consideration consistent with this Opinion. An appropriate Order will be entered.

**Christine P. O'Hearn**
**United States District Judge**